UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION

MICHAEL TYRONE PARKER,

      Petitioner,

v.                            Case No.  5:14cv88/RH/CJK

JULIE L. JONES,

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Before the court is an amended petition for writ of habeas corpus filed under 28 U.S.C. § 2254.  (Doc. 43).  Respondent filed an answer, submitting relevant portions of the state court record.  (Doc. 48 (answer); Docs. 29, 35 (exhibits)).  Petitioner replied.  (Doc. 51).  The matter is referred to the undersigned magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B).  After careful consideration of all issues raised by petitioner, the undersigned concludes that no evidentiary hearing is required for the disposition of this matter.  Rule 8(a) of the Rules Governing Section 2254 Cases in the United States District Courts.  The undersigned further concludes that the pleadings and attachments before the court show that petitioner is not entitled to habeas relief, and that the amended petition should be denied.

BACKGROUND AND PROCEDURAL HISTORY

On October 20, 2010, petitioner was convicted by jury verdict of the first degree premeditated murder of his wife, Wendy Burrough Parker, in Bay County Circuit Court Case No. 07-CF-1928.   (Doc. 29, Exs. B, C).[1]   Petitioner was adjudicated guilty and sentenced to life imprisonment.  (Doc. 29, Ex. D).  The Florida First District Court of Appeal ("First DCA") affirmed the judgment on September 30, 2011, per curiam and without a written opinion.  *Parker v. State*, 70 So. 3d 591 (Fla. 1st DCA 2011) (Table) (copy at Doc. 29, Ex. G).

On December 19, 2012, petitioner filed a *pro se* motion for postconviction relief under Florida Rule of Criminal Procedure 3.850 (Doc. 29, Ex. I).  The state circuit court struck the motion as facially insufficient with leave to amend.  (Doc. 29, Ex. J).  Petitioner filed an amended motion, which he later supplemented with additional grounds.  (Doc. 29, Exs. K, L).  The state court denied relief without an evidentiary hearing.  (Doc. 29, Ex. M).  The First DCA affirmed, per curiam and without a written opinion.  *Parker v. State*, 134 So. 3d 456 (Fla. 1st DCA 2014) (Table) (copy at Doc. 29, Ex. O).  The mandate issued April 8, 2014.  (Doc. 29, Ex. P).

---

[1] The evidence presented at trial is outlined in the parties' direct appeal briefs (doc. 35, Exs. CC, DD), and in the state circuit court's order denying petitioner's amended motion for postconviction relief (doc. 29, Ex. M, pp. 58-61).

While his Rule 3.850 proceeding was pending, petitioner filed a *pro se* state habeas petition on April 3, 2013, alleging ineffective assistance of appellate counsel. (Doc. 29, Ex. Q).  The First DCA denied the petition on the merits.  *Parker v. State*, 114 So. 3d 1031 (Fla. 1st DCA 2013) (copy at Doc. 29, Ex. R).  Petitioner's motions for rehearing were denied on June 13, 2013.  (*Id.*).  The United States Supreme Court denied petitioner's certiorari petition on October 6, 2014.  (Doc. 29, Ex. W).

Petitioner filed his original federal habeas petition on March 27, 2014 (doc. 1, p. 31 in ECF), which he later amended (doc. 43).  The amended petition presents ten claims.  (Doc. 43).  Respondent asserts that each claim fails for one or more of the following reasons:  (1) the claim is not cognizable on federal habeas review; (2) the claim is procedurally defaulted; (3) the state court's rejection of the claim was consistent with clearly established federal law, and was based on a reasonable determination of the facts.  (Doc. 48, pp. 8-50).

<div align="center">RELEVANT LEGAL STANDARDS</div>

<u>Exhaustion and Procedural Default</u>

Before bringing a § 2254 habeas action in federal court, a petitioner must exhaust all available state court remedies for challenging his conviction, 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights."  *Duncan v. Henry*, 513 U.S. 364,

365, 115 S. Ct. 887, 130 L. Ed. 2d 865 (1995) (*quoting Picard v. Connor*, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  The petitioner "must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Boerckel*, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); *Picard*, 404 U.S. at 277-78.  A claim that was not properly presented to the state court and can no longer be litigated under state procedural rules is considered procedurally defaulted, *i.e.*, procedurally barred from federal review.  *O'Sullivan*, 526 U.S. at 839-40, 848; *Hittson v. GDCP Warden*, 759 F.3d 1210, 1260 n.56 (11th Cir. 2014) ("Where a return to state court would be futile – because the petitioner's claims would clearly be barred by state procedural rules – a federal court can 'forego the needless judicial ping-pong' and treat unexhausted claims as procedurally defaulted." (*quoting Snowden v. Singletary*, 135 F.3d 732, 736 (11th Cir. 1998))); *Chambers v. Thompson*, 150 F.3d 1324, 1326-27 (11th Cir. 1998) (holding that federal habeas courts should enforce applicable state procedural bars even as to claims that were never presented to the state courts).

A petitioner seeking to overcome a procedural default must show cause and prejudice, or a fundamental miscarriage of justice.  *Tower v. Phillips*, 7 F.3d 206, 210 (11th Cir. 1993).  "For cause to exist, an external impediment, whether it be

governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." *McCleskey v. Zant*, 499 U.S. 467, 497, 111 S. Ct. 1454, 113 L. Ed. 2d 517 (*citing Murray v. Carrier*, 477 U.S. 478, 488, 106 S. Ct. 2639, 91 L. Ed. 2d 397 (1986)).  The miscarriage of justice exception requires the petitioner to show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Schlup v. Delo*, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995).  This standard is very difficult to meet:

> [A] substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare.  To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial.

513 U.S. at 327.  "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." *Id.*

Section 2254 Standard of Review

Federal courts may issue habeas corpus relief for persons in state custody pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA).  Pub. L. 104-132, § 104, 110 Stat. 1214, 1218-19. Section 2254(d) provides, in relevant part:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (2011).

The United States Supreme Court explained the framework for § 2254 review in *Williams v. Taylor*, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2] The appropriate test was described by Justice O'Connor as follows:

---

[2]Unless otherwise noted, references to *Williams* are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367-75, 390-99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and – except as to the footnote – Scalia) in part II (529 U.S. at 403-13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

> Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

*Id.*, 529 U.S. at 412-13 (O'Connor, J., concurring).

Employing the *Williams* framework, on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a state court proceeding, the federal court must first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  *Lockyer v. Andrade*, 538 U.S. 63, 71-72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" only when a Supreme Court holding at the time of the state court decision embodies the legal principle at issue.  *Thaler v. Haynes*, 559 U.S. 43, 47, 130 S. Ct. 1171, 175 L. Ed. 2d 1003 (2010); *Woods v. Donald*, — U.S. —, 135 S. Ct. 1372, 1376, 191 L. Ed. 2d 464 (2015) ("We have explained that clearly established Federal law for purposes of § 2254(d)(1) includes only the holdings, as opposed to the dicta, of this Court's decisions." (internal quotation marks and citation omitted)).

After identifying the governing legal principle(s), the federal court determines whether the state court adjudication is contrary to the clearly established Supreme Court case law.  The adjudication is not contrary to Supreme Court precedent merely because it fails to cite to that precedent.  Rather, the adjudication is "contrary" only if either the reasoning or the result contradicts the relevant Supreme Court cases. *Early v. Packer*, 537 U.S. 3, 8, 123 S. Ct. 362, 154 L. Ed. 2d 263 (2002) ("Avoiding th[e] pitfalls [of § 2254(d)(1)] does not require citation to our cases – indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them.").  Where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See Woods*, 135 S. Ct. at 1377 (holding, as to claim that counsel was *per se* ineffective in being absent from the courtroom for ten minutes during testimony concerning other defendants:  "Because none of our cases confront the specific question presented by this case, the state court's decision could not be contrary to any holding from this Court." (internal quotation marks and citation omitted)).  If the state court decision is contrary to clearly established federal law, the federal habeas court must independently consider the merits of the petitioner's claim.  *See Panetti v. Quarterman*, 551 U.S. 930, 954, 127 S. Ct. 2842, 168 L. Ed. 2d 662 (2007).

If the "contrary to" clause is not satisfied, the federal habeas court next determines whether the state court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The federal court defers to the state court's reasoning unless the state court's application of the legal principle(s) was "objectively unreasonable" in light of the record before the state court. *Williams*, 529 U.S. at 409; *see Holland v. Jackson*, 542 U.S. 649, 652, 124 S. Ct. 2736, 159 L. Ed. 2d 683 (2004) (per curiam).  In applying this standard, the Supreme Court has emphasized:

> When reviewing state criminal convictions on collateral review, federal judges are required to afford state courts due respect by overturning their decisions only when there could be no reasonable dispute that they were wrong.  Federal habeas review thus exists as "a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal." *Harrington, supra*, at 102-103, 131 S. Ct. 770 (internal quotation marks omitted).

*Woods*, 135 S. Ct. at 1376 (*quoting Harrington v. Richter*, 562 U.S. 86, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in state court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The "unreasonable determination of the facts" standard is implicated only to the extent the validity of

the state court's ultimate conclusion is premised on unreasonable fact finding. *See Gill v. Mecusker*, 633 F.3d 1272, 1292 (11th Cir. 2011). As with the "unreasonable application" clause, the federal court applies an objective test. *Miller-El v. Cockrell*, 537 U.S. 322, 340, 123 S. Ct. 1029, 154 L. Ed. 2d 931 (2003) (holding that a state court decision based on a factual determination "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state court proceeding."). Federal courts "may not characterize . . . state-court factual determinations as unreasonable merely because we would have reached a different conclusion in the first instance." *Brumfield v. Cain*, — U.S. —, 135 S. Ct. 2269, 2277, 192 L. Ed. 2d 356 (2015) (quotation marks omitted).

When performing review under § 2254(d), the federal court presumes that all factual determinations made by the state court are correct. 28 U.S.C. § 2254(e)(1). The petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." *Id*.; *see, e.g., Miller-El*, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"). Neither the Supreme Court nor the Eleventh Circuit has interpreted how § 2254(d)(2) and § 2254(e)(1) interact in the context of fact-based challenges to state court adjudications. *Cave v. Sec'y for Dep't*

*of Corr.*, 638 F.3d. 739 (11th Cir. 2011).  However, the Eleventh Circuit recently declined to grant habeas relief under § 2254(d)(2) in the context of a state appellate court's summary affirmance, where it found that the validity of the state court decision was not premised on the trial court's unreasonable fact finding, and that the petitioner failed to demonstrate "by clear and convincing evidence that the record reflect[ed] an insufficient factual basis for affirming the state court's decision." *Gill*, 633 F.3d at 1292.

Only if the federal habeas court finds that the petitioner satisfied AEDPA and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims.  *See Panetti*, 551 U.S. at 954.  Even then, the writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States."  28 U.S.C. § 2254(a).  "If this standard is difficult to meet, that is because it was meant to be."  *Richter*, 562 U.S. at 102.

## DISCUSSION

| | |
|---|---|
| Ground One | Ineffective assistance of trial counsel for failing to present a heat of passion manslaughter defense. |
| Ground Two | Ineffective assistance of trial counsel for failing to request a special jury instruction on the heat of passion defense. |

Petitioner claims trial counsel was ineffective for failing to present a heat of passion defense to reduce the offense to manslaughter.  Petitioner asserts this was a viable defense because he had just learned "startling information about the victim" at the time he killed his wife.  Petitioner does not identify in Ground One or Two what that startling information was.  (Doc. 1, pp. 5, 12 in ECF).  In his state postconviction proceeding, petitioner indicated that his killing his wife "was basically the result of a fight compounded by the heat of passion.  Her sudden aggression and her admitting her infidelities was [sic] actually 'the straw that broke the camel's back' causing the defendant to go into a fit of rage unknown to him." (Doc. 29, Ex. L, p. 46).

Respondent asserts that the state court ruled as a matter of state law that the evidence in petitioner's case did not support a heat of passion defense; that the state court's binding determination on that state law issue means there could be no attorney error or prejudice for failing to assert the defense or request the instruction; and that petitioner therefore fails to establish that the state court's rejection of his ineffective assistance claim was inconsistent with *Strickland v. Washington*, 466 U.S. 668 (1984), or based on an unreasonable determination of the facts.

A.    Clearly Established Federal Law

In *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance of counsel claims.  The petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced him.  466 U.S. at 687.  "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.  Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different.'"  *Darden v. Wainwright*, 477 U.S. 168, 184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (*quoting Strickland*, 466 U.S. at 694).

Trial "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Strickland*, 466 U.S. at 690.  "To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances."  *Pinholster*, 563 U.S. at 189 (quotation marks and alterations omitted).  "Judicial scrutiny of counsel's performance must be highly deferential," and courts should make every effort to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time."  *Strickland*, 466 U.S. at 689.  "[T]he absence of

evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." *Burt v. Titlow*, 571 U.S. —, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013) (quotation marks and alterations omitted).

With regard to prejudice, the *Strickland* court emphasized that a defendant must show a "reasonable probability" of a different result. A reasonable probability is one that sufficiently undermines confidence in the outcome. *Strickland*, 466 U.S. at 694. "The likelihood of a different result must be substantial, not just conceivable." *Richter*, 562 U.S. at 112.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact. *Strickland*, 466 U.S. at 698; *Collier v. Turpin*, 177 F.3d 1184, 1197 (11th Cir. 1999). "Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010). "Establishing that a state court's application of *Strickland* was unreasonable under § 2254(d) is all the more difficult." *Richter*, 562 U.S. at 105. As the Court in *Richter* explained:

> The standards created by *Strickland* and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is

> "doubly" so.  The *Strickland* standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under *Strickland* with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied *Strickland's* deferential standard.

*Id*. (citations omitted).

### B.    Federal Review of State Court's Decision

Petitioner presented these ineffective assistance claims to the state court in his amended Rule 3.850 motion as Grounds I and II.  (Doc. 29, Ex. K, pp. 22-28).  The state circuit court denied relief as follows:

> **I**. and **II**.  Grounds one and two are related and will be addressed together.  In ground one, the Defendant argues that his trial counsel was ineffective for failing to raise the defense of heat of passion, particularly since he had already confessed to killing his wife and disclosed to law enforcement where his wife's body was located.  In ground two, the Defendant makes the related argument that his trial counsel was ineffective for failing to request a special jury instruction on the heat of passion defense.  He acknowledges that the Court gave the standard jury instruction for excusable homicide, which includes the term "heat of passion," but complains that the standard instruction does not contain language that would inform the jury that if it believed the Defendant's "passion" resulted in the state of mind negating the intent for first or second degree murder, it could return a verdict of guilty of manslaughter.  Thus, in his view, the jury was not properly instructed, as he claims that his only defense could have been heat of passion, and that his actions were not intentional or premeditated.
>
> For support, the Defendant cites to case law discussing the heat of passion defense.  *Febre v. State*, 158 Fla. 853, 30 So. 2d 367 (1947); *Whidden v. State*, 64 Fla. 165, 59 So. 561 (1912).  *Whidden* describes

the defense as follows: "A sudden transport of passion, caused by adequate provocation, if it suspends the exercise of judgment, and dominates volition, so as to exclude premeditation and a previously formed design, may not excuse or justify a homicide, but it may be sufficient to reduce a homicide below murder in the first degree, although the passion does not entirely dethrone the actor's reason." *Whidden*, 74 Fla. at 167, 59 So. at 561. He urges that he was prejudiced because he "virtually went to trial without a defense and was found guilty of first degree murder as opposed to being found guilty of manslaughter after presentation of the heat of passion defense."

To warrant an evidentiary hearing under Rule 3.850, a defendant must allege facts sufficient to establish a prima facie case under the two-prong test set forth in *Strickland v. Washington*, 104 S. Ct. 2052 (1984). First, the defendant must identify particular acts or omissions by counsel that are outside the broad range of reasonable assistance under prevailing professional standards. *Id.* at 2066. Second, the defendant must also demonstrate prejudice, a reasonable probability exists that, but for trial counsel's error, the result in the case would have been different. *Id.* at 2068. A reasonable probability is one sufficient to undermine confidence in the outcome of the case. *Id.*

The defense of heat of passion, though recognized under the law as the Defendant points out, is not part of the standard jury instructions. As such, a special jury instruction on heat of passion would have been necessary. To establish entitlement to a special jury instruction, a defendant must prove the following three factors: (1) the special instruction correctly states the law and is not confusing or misleading, (2) the standard instruction is not adequate to explain the theory of defense, and (3) there is evidence supporting the special jury instruction. *See Wheeler v. State*, 4 So. 3d 599, 605 (Fla.), *cert. denied*, 130 s. Ct. 178 (2009). Additionally, "Florida law is clear that a defendant is entitled to have a jury instruction on any valid defense supported by the evidence," but "a trial judge is not required to give an instruction where there is no nexus between the evidence in the record and the requested instruction." *Mora v. State*, 814 So. 2d 322, 330 (Fla.), *cert. denied*, 123 S. Ct. 603 (2002).

The case law cited by the defendant requires a "sudden transport of passion, caused by adequate provocation." *Whidden*, 64 Fla. at 167, 59 So. at 561.  In *Febre*, the defendant went to his home and discovered his wife there scantily clad with a man who was nude.  The defendant shot the man, who later died from a skull fracture he had received during the ensuing struggle.  *Febre* held that the heat of passion defense warranted a conviction of manslaughter but not first degree murder, and expressly noted, "It does not appear that the defendant knew of any improper relationship between the deceased and the wife of the defendant, until the defendant opened the door, and saw this nude man." *Febre*, 158 Fla. at 857, 30 So. 2d at 369.  *See and compare Norman v. State*, 156 So. 2d 186, 189 (Fla. 3d DCA 1963), *cert. denied*, 165 So. 2d 463 (Fla. 1964) (*Febre* distinguishable on basis that defendant had prior knowledge of his wife's misconduct).  In *Whidden*, the court ruled that the jury was entitled to hear testimony, in support of a heat of passion defense, that "about 20 minutes before the fatal shooting on Monday morning the defendant's wife asked him not to leave home and told him that on the Saturday night before the deceased had broken in her house and room in the nighttime and made an assault upon her, and that he had told her at the time that, if she breathed it to the defendant (her husband,) he (the deceased) would choke her stiff; that for these reasons his wife cried and begged the defendant not to go." *Whidden*, 64 Fla. at 166, 59 So. at 561.  *Whidden* described this news as relayed to the defendant as "startling information."  *Id.* at 64 Fla. at 167, 59 So. at 561.

On the other hand, in *Wheeler*, the defendant shot and killed a deputy sheriff who was on his property in response to a 911 call from a woman who lived with the defendant.  *Wheeler* determined that no evidence was presented by the defense or the State to support a special instruction for heat of passion, noting that the only provocation for the shooting cited by defense counsel to the trial court was the fact that the woman had called 911 and that law enforcement was on the property. *Wheeler* agreed with the trial court that the evidence did not amount to an "adequate and immediate provocation as might obscure the reason or dominate the volition of an ordinary reasonable person," as specified in the special heat of passion instruction.

The Court concludes that the Defendant's trial counsel was not ineffective in grounds one and two. Contrary to the Defendant's position, the evidence in the instant case simply would not have supported a heat of passion defense and jury instruction as there was no "sudden transport of passion, caused by adequate provocation." *Whidden*, 64 Fla. at 167, 59 So. at 561. As indicated, Brown [a trial witness who was close friends with the victim] knew that the Defendant and victim had separated and were going through a divorce. (T 34-5) Additionally, several months earlier, she [Brown] had overheard the Defendant tell the victim that if she ever tried to leave him or divorce him, he would kill her and wrap her in Saran Wrap. (T 39) Similarly, about six months before the victim's death, the Defendant told Clemmons [defendant's employer] that [he] did not want a divorce, and he threatened to kill the victim. (F 52-3) As also indicated, the Defendant in his taped confession, which was played to the jury, acknowledged that he and the victim had been having marital problems and that he already knew that she had been cheating on him. (T 205-8) In short, there was evidence that the Defendant already knew about his wife's infidelity and that he had previously made threats to kill her if she tried to leave him or divorce him. Unlike the fact pattern in *Febre*, the Defendant in the instant case already knew about his wife's infidelities. Unlike the fact pattern in *Whidden*, the Defendant in the instant case had not just been given "startling information." Any provocation in the instant case would not have been any more adequate than the inadequate provocation in *Wheeler* of law enforcement being on the defendant's property.

To be sure, the Defendant argues that trial counsel was ineffective for failing to place him on the stand to explain "what exactly transpired" between him and his wife prior to her death. However, this argument is conclusively refuted by the record, which reflects that the Defendant affirmatively waived his right to testify, despite being advised by trial counsel to testify. (T 289-91) He further argues that trial counsel consulted with him only four times for a total of three hours, so in his view, the "question remains" whether counsel adequately consulted with him and investigated the facts necessary for heat of passion defense. However, as discussed, the evidence would not have supported a heat of passion defense and jury instruction, so

counsel could not have been ineffective for any failure to consult with the Defendant on the issue. In short, there is neither a deficient performance nor resulting prejudice for purposes of *Strickland* with respect to grounds one and two.

(Doc. 29, Ex M, pp. 62-64) (footnote omitted). The First DCA summarily affirmed. (Doc. 29, Ex. O).

The relevant decision for purposes of 28 U.S.C. § 2254 is the First DCA's summary affirmance, which is the final state court adjudication on the merits of petitioner's claims. *Wilson v. Warden, Ga. Diagnostic Prison*, 834 F.3d 1227, —, 2016 WL 4440381, at *5 (11th Cir. 2016) (defining the relevant decision for purposes of § 2254 review as the state appellate court's summary affirmance of the lower tribunal's decision). Where, as here, "the last adjudication on the merits provides no reasoned opinion, federal courts review that decision using the test announced in *Richter*." *Wilson* at *5. In *Richter*, the Court ruled that, "[w]here a state court's decision is unaccompanied by an explanation," a petitioner's burden under section 2254(d) is to "show[ ] there was no reasonable basis for the state court to deny relief." *Richter*, 562 U.S. at 98. "[A] habeas court must determine what arguments or theories supported or, as here, could have supported, the state court's decision; and then it must ask whether it is possible fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of [the] Court." *Id.* at 102. Under this test, petitioner must establish that there was

no reasonable basis for the Florida First DCA to affirm the denial of relief on his ineffective assistance claims.

In determining the reasonableness of the First DCA's decision, this court may, but is not required to, look to the reasoning of the state court below (the state postconviction trial court).  The Eleventh Circuit explained in *Wilson*:

> When the reasoning of the state trial court was reasonable, there is necessarily at least one reasonable basis on which the state [appellate] court could have denied relief and our inquiry ends.  In this way, federal courts can use previous opinions as evidence that the relevant state court decision under review is reasonable.  But the relevant state court decision for federal habeas review remains the last adjudication on the merits, and federal courts are not limited to assessing the reasoning of the lower court.

*Wilson*, 2016 WL 440381, at *9.

Petitioner argues that the state court's decision was based on an unreasonable determination of the facts because the state circuit court considered only the evidence presented at trial to determine that a heat of passion defense was not viable. Petitioner faults the state court for failing to consider additional facts that were "unknown to the jury [and] were not presented for their evaluation."  (Doc. 43, p. 5 in ECF).  Petitioner describes those additional facts as:  "on that fatal day some additional act caused petitioner to act out uncontrollably [sic] which should have been made known to the jury for their evaluation."  (Doc. 43, p. 12 in ECF; *see also id*. ("Some additional event happened that day which could have proven the necessary

sudden transport of passion during the act."))  Petitioner's argument fails for several reasons.

First, petitioner's reference to "some additional act" is so vague it cannot support a finding that the state court unreasonably determined the facts.  Petitioner does not describe the additional act or event, much less provide information about the source, form, availability, or admissibility of evidence concerning that act or event.   This court cannot find that the state court unreasonably failed to consider particular facts when petitioner does not identify what they are.

To the extent petitioner's reference to "some additional act" or event is to the fight he and his wife had just prior to his choking her, *i.e.*, "a fight and her admission of infidelity – resulting in heat of passion" (doc. 29, Ex. K, p. 27; doc. 29, Ex. L, p. 46), the jury heard evidence of that fight (including the victim slapping petitioner and admitting her infidelity) via petitioner's confession, and the state postconviction court expressly considered that evidence in finding that the victim's infidelity and desire for a divorce were known to petitioner far prior to the day he killed her.  To the extent the "additional act" is a reference to petitioner having attempted to kill himself after murdering his wife (*see* Doc. 29, Ex. K, p. 25), that could not support a heat of passion defense because it occurred <u>after</u> he killed his wife.  To the extent petitioner is referencing an "additional act" other than what appears in the trial

transcript or petitioner's Rule 3.850 motion, his claim fails because the state court cannot be faulted for failing to consider facts that are not part of the record before it. *Cf. Cullen v. Pinholster*, 563 U.S. 170, 181-82, 131 S. Ct. 1388, 179 L. Ed. 2d 557 (2011) (holding that the "backward-looking language" of § 2254(d)(1) "requires an examination of the state-court decision at the time it was made. It follows that the record under review is limited to the record in existence at that same time *i.e.*, the record before the state court."). Petitioner has not met his burden under § 2254(d)(2) of showing that the First DCA's decision was based on an unreasonable determination of the facts in light of the record before it. *See Holsey v. Warden, Ga. Diagnostic Prison*, 694 F.3d 1230, 1257 (11th Cir. 2012) ("A state court's . . . determination of facts is unreasonable only if 'no fairminded jurist' could agree with the state court's determination. . . .").

Petitioner also fails to meet the standard under § 2254(d)(1). The state court's decision was not contrary to clearly established federal law, because the state court utilized the *Strickland* standard. Petitioner must therefore show that the state court unreasonably applied *Strickland*.

Petitioner's underlying claims, the availability of a heat of passion defense and special jury instruction, involve questions of Florida law. When the state courts have already answered the question of how an issue would have been resolved under

that state's law had defense counsel done what the petitioner argues he should have done, "federal habeas courts should not second-guess them on such matters" because "it is a fundamental principle that state courts are the final arbiters of state law." *Callahan v. Campbell*, 427 F.3d 897, 932 (11th Cir. 2005) (quotation marks omitted) (holding that defense counsel cannot be deemed ineffective for failing to make a state-law-based objection when the state court has already concluded that the objection would have been overruled under state law; to conclude otherwise would require the federal habeas court to make a determination that the state court misinterpreted state law); *Herring v. Sec 'y Dep't of Corr.*, 397 F.3d 1338, 1354-55 (11th Cir. 2005) (denying federal habeas relief on petitioner's ineffective assistance claim based on counsel's failure to make a state-law-based objection; holding that the Florida Supreme Court's conclusion that the proposed objection would have been overruled was binding and precluded federal habeas relief on the ineffective assistance claim); *see also Sabillo v. Sec'y, Dep't of Corr.*, 355 F. App'x 346, 349 (11th Cir. 2009) (denying habeas relief on claim that counsel was ineffective for failing to request a particular jury instruction – the state courts concluded petitioner was not entitled to the instruction, that state law conclusion was entitled to deference,

and counsel could not be ineffective for failing to request an instruction to which the petitioner was not entitled (*citing Callahan, supra*)).[3]

Because the First DCA could reasonably have concluded that petitioner failed to establish deficient performance and prejudice under *Strickland* because, as a matter of state law, a heat of passion defense was not available and petitioner was not entitled to a special jury instruction on that defense, petitioner is not entitled to federal habeas relief on Grounds One and Two.

Ground Three        Ineffective assistance of trial counsel for failing to file a motion for new trial under Florida Rule of Criminal Procedure 3.600(a)(2).

Petitioner claims trial counsel was ineffective for failing to move for a new trial under Fla. R. Crim. P. 3.600(a)(2), on the ground that the verdict was contrary to the weight of the evidence.  (Doc. 43, pp. 8, 14 in ECF; *see also* Doc. 29, Ex. K, pp. 29-31).  Respondent asserts a procedural default defense, arguing that petitioner "failed to fairly present this claim by failing to make a facially sufficient claim in the state court which would have permitted review."  (Doc. 48, p. 21).  Respondent argues in the alternative that even if the state court's rejection of the claim was

---

[3] The undersigned cites unpublished opinions only as persuasive authority and recognizes that they are not considered binding precedent.  *See* 11th Cir. R. 36-2.

deemed an adjudication on the merits, petitioner fails to establish entitlement to relief under § 2254(d).  (Doc. 48, pp. 23-24).

>       A.       Procedural Default

Petitioner presented this ineffective assistance of counsel claim to the state court in his amended Rule 3.850 motion as Ground III.  (Doc. 29, Ex. K, pp. 29-31). The state circuit court denied relief as follows:

> **III**.  In ground three, the Defendant argues that his trial counsel was ineffective for failing to file a motion for new trial pursuant to Rule 3.600(a)(2).  He acknowledges that trial counsel filed a motion for judgment of acquittal, but urges that counsel also should have filed a motion for new trial to request the court to reweigh the evidence.  He claims that he was prejudiced because counsel's allegedly deficient performance has "caused the loss of all judicial review of the evidentiary weight."  The Court concludes that the Defendant is not entitled to relief on this claim as it is facially insufficient for failing to allege how trial counsel was ineffective for failing to file a motion for new trial and how he was prejudiced for purposes of *Strickland*.  The Defendant has already been given an opportunity to amend this claim pursuant to *Spera v. State*, 971 So. 2d 754 (Fla. 2007).  *See* Order Striking Motion for Postconviction Relief, March 12, 2013.  However, because it remains facially insufficient the Court denies relief.  *See Williams v. State*, 553 So. 2d 309 (Fla. 1st DCA 1989) (rejecting claim that trial counsel was ineffective for failing to file a motion for new trial "allegations of alleged deficiencies were too general").  *See also Manley v. State*, 605 So. 2d 1327, 1328 (Fla. 2d DCA 1992) (rejecting claim that trial counsel was ineffective for failing to file motion for new trial when court "not convinced of any strong likelihood a new trial would have been ordered").

(Doc. 29, Ex. M, p. 64).  The First DCA summarily affirmed.  (Doc. 29, Ex. O).

Respondent's procedural default defense should be rejected.  *See Pope v. Sec'y for Dep't of Corr.*, 680 F.3d 1271, 1286 (11th Cir. 2012) ("[J]ust as under our federal procedural rules, a Florida state court's dismissal of a post-conviction claim for facial insufficiency constitutes – at least for purposes of the procedural default analysis – a ruling "on the merits" that is not barred from our review. . . . [W]hether the Florida Supreme Court rejected the claims for facial insufficiency or only after concluding that they were refuted by the record, the determination would have been on the merits."); *Owen v. Sec'y for Dep't of Corr.*, 568 F.3d 894, 913 (11th Cir. 2009) (rejecting State's procedural default argument; holding that Florida Supreme Court's rejection of petitioner's ineffective assistance claim as insufficiently pled because petitioner failed to identify any specific evidence in the record supporting it, constituted a ruling on the merits and was not a procedural bar ruling).

B.     Clearly Established Federal Law

The clearly established law governing claims of ineffective assistance of counsel is the *Strickland* standard, described above.

C.     Federal Review of State Court's Decision

Petitioner claims, without explanation, that the state court's determination that his claim was facially insufficient "was based on an unreasonable determination of the facts in light of the evidence. . . ."  (Doc. 43, p. 14 in ECF).  This argument fails

because the state court's rejection of this claim was not based on any factual determination, but rather on petitioner's <u>failure</u> to allege facts plausibly showing that counsel had a meritorious basis to request the trial court's reweighing of the evidence, and that such request probably would have changed the outcome of petitioner's trial.

Given petitioner's broad, wholly conclusory assertions – unsupported by specifics – that counsel's conduct was deficient and prejudicial, the First DCA reasonably could have concluded that petitioner failed to make the requisite showing under *Strickland*.  *See, e.g., Hittson v. GDCP Warden*, 759 F.3d 1210, 1271 (11th Cir. 2014) (holding that habeas petitioner's claim that counsel was ineffective for failing to investigate mitigation evidence did not present a substantial claim of ineffective assistance of counsel, where the petition "only hints in broad, conclusory terms that more investigation by his trial counsel would have yielded something useful"); *Borden v. Allen*, 646 F.3d 785, 823 (11th Cir. 2011) (holding that state court's dismissal of petitioner's ineffective assistance claim was not an unreasonable application of *Strickland*, where petitioner provided only conclusory allegations to support his claim).  Petitioner is not entitled to federal habeas relief on Ground Three.

<u>Ground Four</u>        <u>The cumulative effect of trial counsel's errors rendered him</u>
<u>ineffective.</u>

Petitioner argues that cumulative error occurred based on the alleged
ineffectiveness of counsel alleged in Grounds One through Three above.  (Doc. 43,
pp. 10, 14 in ECF; *see also* Doc. 29, Ex. K, pp. 31-33).  Respondent asserts that this
claim is not cognizable on federal habeas review and even if it were, petitioner is not
entitled to relief because "[t]here is no clearly established federal constitutional
claim by the United States Supreme Court of cumulative error based on ineffective
assistance and, therefore, a state court cannot act contrary to Supreme Court
authority when rejecting a cumulative ineffective assistance claim."  (Doc. 48, p. 24,
25-27).

Petitioner presented this cumulative error claim to the state courts in his
amended Rule 3.850 motion as Ground IV.  (Doc. 29, Ex. K, pp. 31-33).  The state
circuit court denied relief as follows:

> **IV**.  In ground four, the Defendant argues that the cumulative
> effect of trial counsel's alleged errors, as set forth in his amended
> motion and supplemental grounds, resulted in ineffective assistance of
> counsel.  The Defendant is not entitled to relief on this claim because
> he has failed to demonstrate ineffective assistance of counsel on any of
> his individual claims.  *See Bryan v. State*, 748 So. 2d 1003, 1008 (Fla.
> 1999) ("[W]here allegations of individual error are found without
> merit, a cumulative-error argument based thereon must fail.").

(Doc. 29, Ex. M, p. 64).  The First DCA summarily affirmed.  (Doc. 29, Ex. O).

In rejecting a similar "cumulative error" argument made by a § 2254 habeas petitioner, the Eleventh Circuit stated: "The Supreme Court has not directly addressed the applicability of the cumulative error doctrine in the context of an ineffective assistance of counsel claim." *Forrest v. Fla. Dep't of Corr*., 342 F. App'x. 560, 564 (11th Cir. 2009). The *Forrest* panel further noted "[h]owever, the Supreme Court has held, in the context of an ineffective assistance claim, that 'there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt.'" *Id*. at 564-65 (*quoting United States v. Cronic*, 466 U.S. 648, 659 n.26, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)).

In light of *Cronic* and the absence of Supreme Court precedent applying the cumulative error doctrine to claims of ineffective assistance of counsel, the First DCA's rejection of petitioner's claim is not contrary to, or an unreasonable application of, clearly established federal law. *See Wright v. Van Patten*, 552 U.S. 120, 126, 128 S. Ct. 743, 169 L. Ed. 2d 583 (2008) ("Because our cases give no clear answer to the question presented, let alone one in [the petitioner's] favor, it cannot be said that the state court unreasonably applied clearly established federal law."); *Schriro v. Landrigan*, 550 U.S. 465, 478, 127 S. Ct. 1933, 167 L. Ed. 2d 836 (2007) (The Arizona Supreme Court did not unreasonably apply federal law because "we

have never addressed a situation like this."); *Reese v. Sec'y, Fla. Dep't of Corr.*, 675 F.3d 1277, 1287-88 (11th Cir. 2012) ("The Supreme Court has reiterated, time and again, that, in the absence of a clear answer – that is, a holding by the Supreme Court – about an issue of federal law, we cannot say that a decision of a state court about that unsettled issue was an unreasonable application of clearly established federal law."); *see also, e.g., Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) (declining to decide whether post-AEDPA claims of cumulative error may ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established federal law, but holding that petitioner's claim of cumulative error was without merit because none of his individual claims of error or prejudice had any merit); *Hill v. Sec'y, Fla. Dep't of Corr.*, 578 F. App'x 805, 810 (11th Cir. 2014) (declining to decide whether a cumulative error claim in the context of ineffective assistance of counsel is cognizable in the habeas context because "even assuming a claim of cumulative error is cognizable in federal habeas proceedings, [petitioner] would not be able to satisfy that standard."). Petitioner is not entitled to federal habeas relief on Ground Four.

Ground Five          Ineffective assistance of trial counsel for conceding petitioner's guilt to second degree murder without petitioner's consent.

Petitioner claims trial counsel was deficient when he conceded petitioner's guilt to second degree murder. Petitioner argues that the concession prejudiced him

because it foreclosed his conviction for the lesser offense of manslaughter. (Doc. 43, pp. 14-15 in ECF). Respondent argues that the state court's rejection of petitioner's claim was consistent with *Strickland*. (Doc. 48, pp. 27-31).

A.     Clearly Established Federal Law

The *Strickland* standard, described above, is the controlling legal standard.

B.     Federal Review of State Court's Decision

Petitioner presented this ineffective assistance claim to the state court as Ground V of his supplement to his amended Rule 3.850 motion. (Doc. 29, Ex. L, pp. 46-48). The state circuit court denied relief as follows:

> **V**. In ground five, the Defendant argues that his trial counsel was ineffective for conceding his guilt to second degree murder without his consent. (T 330-32) He admits there was no dispute that he caused his wife's death, but urges that the issue was whether her death was the result of a fight compounded by the heat of passion. Thus, he takes issue with trial counsel foreclosing the lesser included offense of manslaughter by asking the jury to find him guilty of second degree murder. He points out that trial counsel during the opening statement informed the jury that he would be back at the end of trial to ask them to find Defendant guilty of second degree murder. (T 27-8) He also points out that during closing statement [counsel] foreclosed the other lesser included offense of manslaughter with these additional statements: "This is not a justifiable killing. This is not an excusable killing. Your duty is to find him guilty of a criminal form of homicide." (T 328) And: "I don't think manslaughter applies." (T 328) In this connection, he notes that the State relied on the testimony of two witnesses who related hearsay statements made by him to prove premeditation, and urges that the statements were never actually made by him. The Defendant argues that he was prejudiced because he was found guilty of first degree murder as opposed to the lesser included

offense of manslaughter, which counsel foreclosed through his unauthorized concession.

For support, the Defendant cites to *Nixon v. Singletary*, 758 So. 2d 618 (Fla. 2000), which had applied a *per se* standard of ineffective assistance of counsel when the defendant had not agreed to trial counsel's strategy of conceding guilt to the crime charged.  However, that decision was reversed in *Florida v. Nixon*, 125 S. Ct. 551, 563 (2004), which determined that such claims should be analyzed under *Strickland*:  "When counsel informs the defendant of the strategy counsel believes to be in the defendant's best interest and the defendant is unresponsive, counsel's strategic choice is not impeded by any blank rule demanding the defendant's explicit consent.  Instead, if counsel's strategy, given the evidence bearing on the defendant's guilt, satisfies the *Strickland* standard, that is the end of the matter; no tenable claim of ineffective assistance would remain."

In any event, under the case law, trial counsel is not ineffective for conceding guilt of second degree murder in a first degree murder prosecution without obtaining the defendant's consent.  In *Jones v. State*, 845 So. 2d 55, 70-71 (Fla. 2003), the court explained that concession of guilt to the lesser included offense of second degree murder can be a reasonable trial strategy without obtaining the defendant's consent and that counsel should not be required "to present arguments with no credibility and contrary to fact to satisfy [the defendant's] theory of representation." *See State v. Duncan*, 894 So. 2d 817, 827 (Fla. 2004), *cert. denied*, 126 S. Ct. 397 (2005) (trial counsel's concession of guilt to the lesser included offense of second degree murder not an unreasonable strategic decision in light of the evidence, including a confession and three eyewitnesses).  In *Atwater v. State*, 788 So. 2d 223, 231 (Fla. 2001), the court explained, "Sometimes concession of guilt to some of the prosecutor's claims is good trial strategy and within defense counsel's discretion in order to gain credibility and acceptance of the jury." *Atwater* cited to *McNeal v. State*, 409 So. 2d 528, 529 (Fla. 5th DCA 1982), which stated,

> When faced with the duty of attempting to avoid the consequences of overwhelming evidence of the

> commission of an atrocious crime, such as a deliberate,
> considered killing without the remotest legal justification
> or excuse, it is commonly considered a good trial strategy
> for a defense counsel to make some halfway concessions
> to the truth in order to give the appearance of
> reasonableness and candor and to thereby gain credibility
> and jury acceptance of some more important position.

To be sure, *Jones*, *Duncan*, and *Atwater* were death cases, so counsel in those cases made the concession of guilt of second degree murder partly to save the defendant's life. However, these cases are apposite insofar as trial counsel in the instant case was otherwise trying to avoid a conviction for first degree murder. After conceding guilt of second degree murder, counsel went on to argue that the Defendant was not guilty of first degree murder, the charged offense, as the State had failed to prove premeditation. (T 332-35) These cases are also instructive as they demonstrate that counsel should not make arguments that lack credibility and are contrary to the evidence, and that when faced with strong evidence of guilt, it is sound strategy for trial counsel "to make some halfway concessions to the truth in order to give the appearance of reasonableness and candor and to thereby gain credibility and jury acceptance of some more important position." *McNeal*, 409 So. 2d at 529. Contrary to the defendant's position, trial counsel performed reasonably in conceding guilt of second degree murder to "gain credibility and jury acceptance of some more important position," namely guilt of second degree murder as opposed to first degree murder, because the facts of the instant case simply did not support manslaughter or heat of passion and counsel would have lost credibility with the jury had he argued for manslaughter or heat of passion. As discussed, the Defendant in his confession acknowledged that during the criminal episode, he choked the victim for 10 to 15 minutes and only stopped when he got tired. (T 210-12) Further, the autopsy disclosed that the victim suffered multiple blunt trauma injuries to her head, neck and torso. (T 274) The trauma to the neck resulted in deep, extensive hemorrhaging that surrounded the esophagus and ordinarily would not be caused by choking alone "unless you're really slamming the person." (T 270-71) His hearsay statements to the two witnesses, Brown and Clemmons, about threatening to kill the victim were

admissible.  (T 39, 52-3)  Finally, just because trial counsel's strategy proved unsuccessful does not mean counsel was ineffective.  *See Heath v. State*, 3 So. 3d 1017, 1029 (Fla. 2009) ("The fact that this defense strategy was ultimately unsuccessful with the jury does not render counsel's performance deficient.").

(Doc. 29, Ex. M, pp. 65-66).  The First DCA summarily affirmed.  (Doc. 29, Ex. O).

Petitioner argues that the state circuit court's rejection of his claim involved an unreasonable application of the Supreme Court's decisions in *Nixon* and *Strickland*, because the court unreasonably determined that defense counsel's concession of guilt was a reasonable strategy.  The state court did not unreasonably apply *Strickland*.  Given the statements petitioner made in his confession (doc. 35, Ex. BB, pp. 198-242), the evidence of premedition (*id*., pp. 37-40, 46-53), petitioner's decision not to testify which was contrary to defense counsel's advice (*id*., pp. 289-291),[4] and the lack of evidence for counsel to base a "heat of passion" manslaughter argument, defense counsel reasonably could have made the strategic decision to, as the state circuit court put it, "conced[e] guilt of second degree murder to gain credibility and jury acceptance of some more important position, namely guilt of second degree murder as opposed to first degree murder, because the facts of the instant case simply did not support manslaughter or heat of passion".  (Doc.

---

[4] Petitioner was the only witness who could have testified to what he now refers to as the heat-of-passion evidence, i.e., the alleged "additional act [that] caused petitioner to act out uncontrollably [sic]" (doc. 43, p. 12 in ECF).

29, Ex. M, p. 66 (internal quotation marks omitted)).   As there is at least one

reasonable basis on which the First DCA could have denied relief, petitioner is not

entitled to federal habeas relief on Ground Five.  *See Wilson*, 2016 WL 440381, at

*9; *see also, e.g., Ward v. Hall*, 592 F.3d 1144, 1164 (11th Cir. 2010) ("We have

long held that the fact that a particular defense was unsuccessful does not prove

ineffective assistance of counsel.") (*citing Chandler v. United States*, 218 F.3d 1305,

1314 (11th Cir. 2000)); *Felker v. Thomas*, 52 F.3d 907, 912 (11th Cir. 1995)

(explaining that whether to pursue residual doubt or another defense is a matter of

trial strategy left to counsel, which the court must not second-guess); *Stanley v. Zant*,

697 F.2d 955, 964 (11th Cir. 1983) (stating that reliance on a particular line of

defense to the exclusion of others is a matter of strategy).

<u>Ground Six</u>          <u>Ineffective assistance of trial counsel for failing to challenge the
                       court's jury instruction on manslaughter.</u>

Petitioner claims trial counsel was ineffective for failing to object to an error

in the manslaughter jury instruction.  (Doc. 43, pp. 15-16 in ECF).  Respondent

asserts that the state court's rejection of this claim was a reasonable application of

*Strickland*.  (Doc. 48, pp. 31-35).

A.     Clearly Established Federal Law

The *Strickland* standard, described above, is the controlling legal standard.

B.      Federal Review of State Court's Decision

Petitioner presented this ineffective assistance claim to the state courts as

Ground VI of his supplement to his amended Rule 3.850 motion.  (Doc. 29, Ex. L,

pp. 48-50).  The state circuit court denied relief as follows:

> **VI**.  In ground six, the Defendant argues that his trial counsel was
> ineffective for failure to challenge the court's jury instruction on
> manslaughter.  The manslaughter jury instruction in pertinent part was
> as follows:
>
>> To prove the lesser included crime of Manslaughter, the
>> State must prove the following two elements beyond a
>> reasonable doubt:
>>
>> 1.      Wendy Parker is dead.
>>
>> 2.      a.      Michael Tyrone Parker *intentionally caused
>> the death* of Wendy Burrough Parker.
>>
>>                                OR
>>
>>         b.      The death of Wendy Burrough Parker was
>> caused by the culpable negligence of Michael Tyrone
>> Parker.
>
> (R 221) (italics added)  He argues that the manslaughter instruction was
> defective because it is not materially different from the jury instructions
> held to be fundamental error in *State v. Montgomery*, 39 So. 3d 252
> (Fla. 2010) and *Riesel v. State*, 48 So. 3d 885 (Fla. 1st DCA 2010),
> *review denied*, 66 So. 3d 304 (Fla. 2011).  In *Montgomery* and *Riesel*,
> the jury instructions were erroneous in stating that the jury had to find
> that the defendant had the intent to kill the victim since the offense of
> manslaughter does not require an intent to kill the victim.

The Defendant is correct that the italicized portion of the manslaughter jury instruction is erroneous under *Montgomery* and *Riesel*, but is incorrect in arguing that fundamental error occurred in the instant case.   In both *Montgomery* and *Riesel*, the defendants were convicted of second degree murder.   *Montgomery* determined that the error was fundamental in that circumstance, explaining:   "The lesser included offense of manslaughter is just one step removed from second-degree murder.   Because Montgomery's conviction for second-degree murder was only one step removed from the necessarily included offense of manslaughter, under *Pena* [*v. State*, 901 So. 2d 781 (Fla. 2005)], fundamental error occurred in his case which was per se reversible."   *Montgomery*, 39 So. 3d at 259.   In contrast to *Montgomery* and *Riesel*, the Defendant in the instant case was convicted as charged of first degree murder, which is two steps removed from manslaughter. (R 15, 232-33)   Consequently, the error was not fundamental but was subject to a harmless error analysis as explained in *Joseph v. State*, 42 So. 3d 323 (Fla. 4th DCA 2010).

The defendant in *Joseph* was convicted of first degree murder and attempted first degree murder, offenses two steps removed from manslaughter and attempted manslaughter.   Though the jury instruction incorrectly stated that the jury had to find that the defendant had the intent to kill the victim, *Joseph* determined that a harmless error analysis pursuant to *Pena* applied.   In *Pena*, the court determined that "when the trial court fails to properly instruct on a crime two or more degrees removed from the crime for which the defendant is convicted, the error is not per se reversible, but instead is subject to a harmless error analysis."   *Pena*, 901 So. 2d at 787.   *Joseph* then held that the error with the manslaughter jury instruction was harmless because the defendant had given an "admissible confession."   *Joseph*, 42 So. 3d at 325.

Similar to *Joseph*, the Defendant in the instant case was convicted of first degree murder, which is two steps removed from manslaughter.   Also similar to *Joseph*, the defendant in the instant case gave an admissible confession.   (T 210-12)   In light of these circumstances, the Court finds that the error with the manslaughter jury instruction was harmless.  Since the error was harmless, it follows that

for purposes of *Strickland*, the Defendant was not prejudiced by trial counsel's failure to object to the erroneous manslaughter jury instruction.

(Doc. 29, Ex. M, pp. 66-67) (footnote omitted).  The First DCA summarily affirmed. (Doc. 29, Ex. O).

Petitioner takes issue with the state court's determination that manslaughter was two steps removed from first degree murder, arguing that such determination "was based on an unreasonable determination of the facts. . . ."  (Doc. 43, p. 15 in ECF).  Petitioner also argues that the state court erred in finding his case analogous to *Joseph, supra*.  (Doc. 43, p. 16 in ECF).

The verdict form establishes that the lesser-included offense of manslaughter was two steps removed from the crime of which petitioner was convicted.  Petitioner was convicted of first degree premeditated murder.  (Doc. 29, Ex. C); *see also* Fla. Stat. § 782.04(1).  The next lesser-included offense on the verdict form was second degree murder.  (*Id.*); *see also* Fla. Stat. § 782.04(2).  Then the manslaughter charge was listed.  (*Id.*); *see also* Fla. Stat. § 782.07(1).  The importance of the term "two steps removed" as used by the Florida courts, has been explained:

> [T]he significance of the two-steps-removed requirement <u>is more than merely a matter of number or degree</u>.  A jury must be given a fair opportunity to exercise its inherent "pardon" power by returning a verdict of guilty <u>as to the next lower crime</u>.  If the jury is not properly instructed on the next lower crime, then it is impossible to determine

> whether, having been properly instructed, it would have found the
> defendant guilty of the next lesser offense.

*Pena*, 901 So. 2d at 787 (emphasis added).  The charge for which petitioner was

convicted was two steps removed from the lesser-included offense of manslaughter.

*See State v. Montgomery*, 39 So. 3d 252, 259 (Fla. 2010) ("Second-degree murder

as a lesser included offense is one step removed from first-degree murder, and

manslaughter as a lesser included offense is two steps removed from first-degree

murder.")  Petitioner has not shown that the First DCA's decision was based on an

unreasonable determination of the facts.

    As to the "unreasonable application" element of § 2254(d)(1), given that the

jury did not exercise its "pardon power" to convict petitioner of the next-lesser-

included offense of second degree murder (on which the jury was properly

instructed), and in light of petitioner's admissible confession, the First DCA

reasonably could have concluded that petitioner failed to establish a reasonable

probability the jury would have convicted him of the even further removed (two

steps removed) lesser offense of manslaughter had it been properly instructed on that

offense.  Petitioner is not entitled to federal habeas relief on Ground Six.

Ground Seven        <u>Ineffective assistance of trial counsel for failing to call petitioner
to testify at the pretrial suppression hearing.</u>

Petitioner claims trial counsel was ineffective for failing to call him as a witness at the hearing on his pretrial motion to suppress.  (Doc. 43, pp. 17-18 in ECF).  Petitioner does not describe his proposed testimony.  In petitioner's supplement to his amended Rule 3.850 motion, petitioner asserted that his proposed testimony would have been "to clarify whether Defendant stressed to law officials that his actions were intentional" and to clarify what he meant when he told officers he felt a sense of "relief" following the crime and his attempt at suicide.  (Doc. 29, Ex. L, pp. 51-52).  Respondent asserts that petitioner fails to demonstrate that the state court unreasonably applied clearly established federal law.  (Doc. 48, pp. 35-36).

A.     Clearly Established Federal Law

The *Strickland* standard, described above, is the controlling legal standard.

B.     Federal Review of State Court's Decision

Petitioner presented this ineffective assistance claim to the state court as Ground VII of his supplement to his amended Rule 3.850 motion.  (Doc. 29, Ex. L, pp. 51-53).  The state circuit court denied relief as follows:

> **VII**.  In ground seven, the Defendant argues that his trial counsel was ineffective for failing to call him to testify as a witness at the pretrial hearing on his motion to suppress.  He claims that this trial

counsel should have called him to the stand to clarify his statements to law enforcement, particularly those expressing his "relief."  He urges that his testimony was necessary to negate the state's theory of premeditation, and apparently seeks to clarify that his "relief" was based merely upon letting law enforcement know what happened, not on killing his wife.  He further alleges that at the time he made his statements to law enforcement, he was under heavy sedation, which handicapped his ability to articulate whether law enforcement was misconstruing his statements.  He urges that he was prejudiced by counsel's' alleged ineffectiveness because his testimony at the pretrial hearing would have been necessary to elicit what was actually said by him to law enforcement.

The Court concludes that the Defendant is not entitled to postconviction relief on this claim.  At issue at the pretrial hearing on his motion to suppress was whether his statements to law enforcement were admissible at trial.   Testimony from the Defendant at the suppression hearing merely to clarify some of his statements to law enforcement would have had no bearing on their admissibility.  Thus, counsel could not have been ineffective on this basis under *Strickland*.

(Doc. 29, Ex. M, p. 68).  The First DCA summarily affirmed.  (Doc. 29, Ex. O).

The First DCA reasonably could have concluded that petitioner failed to establish either prong of the *Strickland* standard.  The purpose of the suppression hearing was to receive evidence concerning the circumstances under which petitioner's statements to law enforcement were made so the court could determine their admissibility.  The issues outlined in the defense motion to suppress were (1) whether law enforcement's entry into petitioner's motel room and arrest of petitioner violated the Fourth Amendment, and (2) whether petitioner's statements to law enforcement while in the hospital were involuntary.  (Doc. 35, Ex. X (motion to

suppress), Ex. Z (transcript of suppression hearing)).  The purpose was not to clarify or interpret the substance of petitioner's statements describing the crime and his actions afterward, or to determine whether petitioner's murder of his wife was premeditated.  Those were issues for the jury to decide.  As petitioner's proposed testimony was not relevant to either of the suppression issues, petitioner cannot establish that counsel was ineffective for failing to offer it.  The First DCA's rejection of petitioner's claim was not contrary to and did not involve an unreasonable application of the *Strickland* standard.  Nor was the decision based on an unreasonable determination of the facts.  Petitioner is not entitled to federal habeas relief on Ground Seven.

| Ground Eight | Ineffective assistance of appellate counsel for failing to raise the issue on direct appeal of the erroneous jury instruction on manslaughter. |
|---|---|

Petitioner claims appellate counsel was ineffective for failing to argue on direct appeal that the state trial court committed fundamental error when it instructed the jury that the lesser-included offense of manslaughter included as an element a showing of intent.  (Doc. 43, p. 18 in ECF).  Respondent asserts that the state court ruled as a matter of state law that petitioner's underlying claim – the unpreserved jury instruction error – would not have succeeded on direct appeal because the error was not considered fundamental under state law; that the state court's binding

determination of state law means there could not be attorney error or prejudice for failing to raise the unpreserved error; and that petitioner therefore fails to establish that the state court's rejection of his ineffective assistance claim was contrary to, or involved an unreasonable application of, *Strickland*.  (Doc. 48, pp. 36-39).

> A.    Clearly Established Federal Law

An ineffective assistance of appellate counsel claim is considered under the two-part test announced in *Strickland*.  *Smith v. Robbins*, 528 U.S. 259, 285, 120 S. Ct. 746, 145 L. Ed. 2d 756 (2000) (holding that *Strickland* is the proper standard for evaluating a claim that appellate counsel was ineffective).  Petitioner must show (1) appellate counsel's performance was objectively unreasonable, and (2) there is a reasonable probability that, but for counsel's unreasonable performance, petitioner would have prevailed on his appeal.  *Smith*, 528 U.S. at 285-86.

> B.    Federal Review of State Court's Decision

Petitioner presented his ineffective assistance of appellate counsel claim to the First DCA in his state habeas petition, relying on *Montgomery v. State*, 39 So. 2d 252 (Fla. 2010), and *Riesel v. State*, 48 So. 3d 885 (Fla. 1st DCA 2010).  (Doc. 29, Ex. Q).  On April 26, 2013, the First DCA denied the petition as follows:  "DENIED. <u>See</u> <u>Joseph v. State</u>, 42 So. 3d 323 (Fla. 4th DCA 2010)."  *See Parker v. State*, 114

So. 3d 1031 (Fla. 1st DCA 2013) (copy at Doc. 29, Ex. R).  Rehearing was denied on June 13, 2013.  (Doc. 29, Ex. U).

As explained in Ground Seven above, *Joseph v. State* held that a trial court's error in giving the standard jury instruction on manslaughter (advising the jury that it had to find the defendant intentionally killed the victim), is not considered fundamental error in Florida when the defendant was convicted of first degree murder, a crime two steps removed from the crime of manslaughter.  *Joseph*, 42 So. 3d at 325.  The court in *Joseph* went on to hold that the error was harmless in light of the defendant's admitted confession.  *Id*.  The First DCA's reliance on *Joseph* to deny petitioner's ineffective assistance claim represents its conclusion that had appellate counsel raised the unpreserved, state-law-based jury instruction error petitioner urges, he would not have succeeded because, as a matter of Florida law, the unpreserved error was considered harmless.  When the state court has already answered the question of how an issue would have been resolved under that state's law had counsel done what the petitioner argues he should have done, "federal habeas courts should not second-guess them on such matters" because "it is a fundamental principle that state courts are the final arbiters of state law." *Callahan*, 427 F.3d at 932 (quotation marks omitted).  Because this court will not "second guess" the Florida state court's conclusion that petitioner's unpreserved jury

instruction error claim would not have warranted relief on appeal, petitioner cannot demonstrate his appellate counsel was deficient for failing to raise it; nor can he demonstrate he was prejudiced by counsel's conduct.  *See id.*; *Herring, supra*; *see also, Owen*, 568 F.3d at 915 (agreeing that where underlying claim would not have succeeded, any deficiency of appellate counsel in failing to raise it cannot constitute ineffective assistance of counsel). Petitioner is not entitled to habeas relief on Ground Eight.

Ground Nine            Ineffective assistance of counsel and trial court error in denying petitioner's motion to suppress evidence obtained from law enforcement's unlawful entry into the motel room.

Petitioner begins by asserting that the trial court unreasonably determined the facts when it "rul[ed] that trial counsel rendered effective assistance at the suppression hearing. . . ."  (Doc. 43, p. 19 in ECF).  Petitioner goes on to assert that the trial court erred in denying his motion to suppress evidence.  Petitioner argues that law enforcement's warrantless entry into his motel room was unreasonable, and that the trial court's ruling that the entry was justified contravenes the Fourth Amendment.  (*Id.*).  Petitioner asserts that he exhausted these claims by raising them in his direct appeal.  (*Id.*, pp. 19-20 in ECF).

Respondent asserts that to the extent petitioner attempts to raise an ineffective assistance of counsel claim, the claim is unexhausted and procedurally defaulted

because petitioner did not raise this ineffective assistance claim in his Rule 3.850 proceeding.  (Doc. 48, p. 40).  Respondent asserts that to the extent petitioner is challenging the trial court's determination that the officers' entry into his motel room did not violate the Fourth Amendment, that claim is barred from review under *Stone v. Powell*, 428 U.S. 465, 96 S. Ct. 3037, 49 L. Ed. 2d 1067 (1976), and, in any event, without merit.  (Doc. 48, pp. 40-47).

A.   Ineffective Assistance of Counsel Claim

The record confirms that neither petitioner's amended Rule 3.850 motion, nor his supplemental Rule 3.850 motion presented a claim that trial counsel was ineffective in arguing the Fourth Amendment issue.  (Doc. 29, Exs. K, L).  Likewise, no such claim is mentioned in the state postconviction court's order denying relief. (Ex. M).  "'[A] habeas petitioner may not present instances of ineffective assistance of counsel in his federal petition that the state court has not evaluated previously.'" *Ogle v. Johnson*, 488 F.3d 1364, 1369 (11th Cir. 2007) (*quoting Footman v. Singletary*, 978 F.2d 1207, 1211 (11th Cir. 1992); *Jackson v. Herring*, 42 F.3d 1350, 1355 (11th Cir. 1995) ("Habeas petitioners generally may not raise ineffective assistance of counsel claims except on grounds specifically presented to the state courts."); *see also McNair v. Campbell*, 416 F.3d 1291, 1302 (11th Cir. 2005) (holding that to satisfy the exhaustion requirement, a petitioner must have presented

the instance of ineffective assistance that he asserts in his federal petition "such that a reasonable reader would understand [the] claim's particular legal basis and specific factual foundation" ) (internal quotation marks omitted).

Petitioner's failure to present the state court with an ineffective assistance claim based on trial counsel's performance on the Fourth Amendment issue renders this aspect of Ground Nine procedurally defaulted.  Petitioner does not make any of the requisite showings to excuse his default.  Petitioner's procedural default bars federal habeas review of any challenge to defense counsel's performance in litigating the Fourth Amendment issue.

      B.     Fourth Amendment Claim

Petitioner's Ground Nine also challenges the trial court's conclusion that law enforcement officers' warrantless entry into petitioner's motel room did not violate the Fourth Amendment.  Petitioner raised this Fourth Amendment claim in his state court motion to suppress.  (Doc. 35, Ex. X).  A hearing was held, where testimony was taken and arguments heard.  (Doc. 35, Ex. Z).  The state trial court denied petitioner's motion in a four-page written order, making explicit findings on matters essential to the Fourth Amendment issue.  (Doc. 35, Ex. AA).  Petitioner obtained review of the issue on direct appeal.  (Doc. 35, Ex. CC).  The state appellate court

summarily affirmed.  *Parker v. State*, 70 So. 3d 591 (Fla. 1st DCA 2011) (Table)
(copy at Doc. 29, Ex. G).

"[W]here the State has provided an opportunity for full and fair litigation of a
Fourth Amendment claim, a state prisoner may not be granted federal habeas corpus
relief on the ground that evidence obtained in an unconstitutional search or seizure
was introduced at his trial."  *Stone*, 428 U.S. at 494 (footnotes omitted).  The *Stone*
Court found that, in the habeas context, "the contribution of the exclusionary rule, if
any, to the effectuation of the Fourth Amendment is minimal, and the substantial
societal costs of application of the rule persist with special force."  428 U.S. at 494-
95 (footnote omitted).  "'For a claim to be fully and fairly considered by the state
courts, where there are facts in dispute, full and fair consideration requires
consideration by the fact-finding court, and at least the availability of meaningful
appellate review by a higher state court.'"  *Mincey v. Head*, 206 F.3d 1106, 1126
(11th Cir. 2000) (*quoting Tukes v. Dugger*, 911 F.2d 508, 513-14 (11th Cir. 1990),
*in turn quoting Morgan v. Estelle*, 588 F.2d 934, 941 (5th Cir. 1979)).  Petitioner
does not assert he was not given a full and fair hearing on the merits of his Fourth
Amendment claim, nor can he.  Because petitioner had a full and fair opportunity to
litigate his Fourth Amendment claim in the Florida courts, the claim affords no basis
for federal habeas relief.

Ground Ten          <u>Trial court error in denying petitioner's motion to suppress</u>
                    <u>involuntary statements taken from him while he was in the</u>
                    <u>hospital.</u>

Petitioner's final claim is that the trial court erred in denying his motion to suppress his statements to law enforcement made while he was in the hospital recuperating from self-inflicted lacerations to his neck and wrists.   Petitioner confessed to killing his wife and described in detail his and his wife's actions that day, how he killed his wife, and what he did following the killing.   Petitioner contends that the statements should have been suppressed as involuntary because they were made while he was in the hospital in pain and under the influence of medications.   Petitioner was given full *Miranda* warnings by Detective Brown and Investigator Mathis prior to being questioned and does not contend there was any failure to advise him of his constitutional rights.

Respondent asserts that petitioner's claim is procedurally defaulted because briefing of the issue on direct appeal was so cursory that it constituted abandonment under state law.  (Doc. 48, pp. 48-49).  Respondent argues that even if her procedural default defense is rejected, petitioner is not entitled to relief because the state court's rejection of petitioner's claim was neither contrary to, nor involved an unreasonable application of, clearly established Supreme Court precedent.  (*Id*., pp. 49-50).

A.    Exhaustion and Procedural Default

Petitioner's amended initial brief on direct appeal raised one claim:  that the trial court erred in denying petitioner's motion to suppress.  (Doc. 35, Ex. CC). Petitioner's summary of the argument asserted that there was insufficient probable cause to justify the officers' warrantless entry into petitioner's motel room, and that all of the evidence and knowledge obtained as a result of that illegal entry (including all tangible evidence and all statements by petitioner) were required to be suppressed as fruit of the poisonous tree.  (Doc. 35, Ex. CC).  Petitioner's summary also stated that "independently of the deputies' illegal entry into the motel room, statements later taken from appellant when he was in the hospital were involuntary because of the trauma of his injuries and the influence of unknown narcotics that had been administered to him by medical personnel." (*Id*., p. 22).  Petitioner's briefing of the issue included facts relating to both the officers' entry into petitioner's motel room and their taking of petitioner's statements at the hospital.  (*Id*., pp. 23-32).  The majority of petitioner's legal argument concerned the alleged illegality of the officers' entry into the motel room, with a single sentence devoted to the involuntary confession issue:  "Finally, independently of the illegal and warrantless entry of the motel room, appellant's statements were involuntary because he was under the

influence of the trauma of his injuries and his unknown medications.  *Reddish v. State*, 167 So. 2d 858 (Fla. 1964)."   (Doc. 35, p. 32).

The State's answer brief on direct appeal argued that the trial court correctly ruled that the officers' warrantless entry was justified.  (Doc. 35, Ex. DD, pp. 3-10).  As to petitioner's challenge to the voluntariness of his statements, the State responded that the claim was barred under Florida law:

> Appellant mentions in a single sentence that Appellant's statements were involuntary due to injury and medication.  (IB 32).  Appellant's argument ignores the trial court's finding that there was "no evidence that, based on his medical condition, he could not make a competent waiver of his rights."  (II 200).  Appellant has not argued that the trial court's finding should not be followed, nor has he argued the finding was not supported by competent, substantial evidence.  Therefore, any such argument is procedurally barred.  Cf.  Hall v. State, 823 So. 2d 757, 763 (Fla. 2002) ("[A]n issue not raised in an initial brief is deemed abandoned and may not be raised for the first time in a reply brief.")[.]

(Doc. 35, Ex. DD, p. 11).   The First DCA summarily affirmed petitioner's conviction.  (Doc. 29, Ex. G).

Respondent argues that petitioner "never raised a cognizable claim on direct appeal concerning whether his confession was voluntary, thereby waiving the claim for review and preventing the appellate court from having a full and fair opportunity to rule on the argument."  (Doc. 48, p. 48).  The court need not decide the procedural default issue because even assuming to petitioner's benefit that he properly

presented this claim to the state court and that the First DCA adjudicated the claim

on the merits (as opposed to deeming it abandoned), petitioner is not entitled to

federal habeas relief.

> B.       Clearly Established Federal Law

"[A]ny criminal trial use against a defendant of his *involuntary* statement is a

denial of due process of law, 'even though there is ample evidence aside from the

confession to support the conviction.'"  *Mincey v. Arizona*, 437 U.S. 385, 398, 98 S.

Ct. 2408, 57 L. Ed. 2d 290 (1978) (emphasis in original) (*quoting Jackson v. Denno*,

378 U.S. 368, 376, 84 S. Ct. 1774, 12 L. Ed. 2d 908 (1964) (other citations omitted)).

The voluntariness of a confession requires consideration of the totality of the

circumstances under which it was made.  *Blackburn v. State of Ala.*, 361 U.S. 199,

206, 80 S. Ct. 274, 4 L. Ed. 2d 242 (1960) (citation omitted).  The Supreme Court

explained in *Withrow v. Williams*, 507 U.S. 680, 113 S. Ct. 1745, 123 L. Ed. 2d 407

(1993):

> Under the due process approach, . . . courts look to the totality of
> circumstances to determine whether a confession was voluntary.  Those
> potential circumstances include not only the crucial element of police
> coercion; the length of the interrogation; its location; its continuity; the
> defendant's maturity; education; physical condition; and mental health.
> They also include the failure of police to advise the defendant of his
> rights to remain silent and to have counsel present during custodial
> interrogation.

407 U.S. at 693-94 (citations omitted).

C.     Federal Review of State Court's Decision

At the suppression hearing, the State called a motel employee, deputies of the Osceola County Sheriff's Office (OCSO), and deputies of the Bay County Sheriff's Office (BCSO).  (Doc. 35, Ex. Z).  The motel employee (Mr. Wilson) and three Osceola County deputies (Gorsuch, Hinderman and Detective Brown) testified to the circumstances surrounding their entry into petitioner's motel room.  OCSO Detective Brown and BCSO Investigator Mathis testified to the circumstances surrounding petitioner's statements to investigators at the hospital.

From the timeline described by the motel employee and deputies, the deputies gained entry into petitioner's motel room between 3:15 a.m. and 4:15 a.m., on May 23, 2007, at which time the deputies discovered petitioner "lying in a pool of blood on the bed, face up" with cuts to his wrists and neck.  Petitioner was removed from the room by emergency medical personnel, and was then life-flighted to a nearby hospital.  Petitioner arrived at the hospital later that morning, where he was examined and treated.

The evening of May 23, 2007, Detective Brown made contact with the hospital and inquired when he could talk to petitioner.  Detective Brown was unable to talk to petitioner that day because petitioner was under heavy sedation.  On May 24, 2007, Detective Brown again made contact with a nurse at the hospital and

inquired whether petitioner was still under heavy sedation.  The nurse told Brown

that they were taking petitioner off all major mediations and that he should be fine

to talk within a couple of hours.  Detective Brown and Detective Roller arrived at

the hospital late morning.  Petitioner "[l]ooked pretty rough, like he had been

through a lot. . . . [B]oth of his hands were bandaged and his neck was extremely

bandaged."  (Doc. 35, Ex. Z, pp. 309-310).[5]  Petitioner was not on any life support

systems.

> At the suppression hearing, Detective Brown was asked:
>
> Q [Prosecutor]:  Now, he had some bandages wrapped up and he had
> some IV in him, but as far as like a breathing apparatus or being
> intubated, you know, having a tube helping him breathe or anything
> like that, did he have those things, anything other than an IV and
> bandages on him, sir?
>
> A [Detective Brown]:  No, he did not.  I specifically spoke with his
> nurse to make sure that he was not – she said all the main sedations
> were done and he was fine to talk to.

(Doc. 35, Ex. Z, p. 318).  Detective Brown advised petitioner of his constitutional

rights and petitioner waived them, but petitioner had a hard time answering questions

because of the bandages on this throat.  (*Id*, pp. 311-312).  A copy of the *Miranda*

form and a transcript of Brown's recorded interview were admitted into evidence at

---

[5] References to page numbers of the suppression hearing transcript are to the Bates-stamp number.

the suppression hearing.  (Doc. 35, Ex. Z, pp. 314-35).[6]  Detective Brown concluded

the first interview at 11:00 a.m.  Detectives Brown and Roller interviewed petitioner

again shortly thereafter, after again advising petitioner of his constitutional rights

and receiving petitioner's waiver.  Petitioner was more alert, coherent and able to

answer Brown's questions.  The second interview ended at 12:54 p.m.  (*Id*., p. 316).

Detectives Brown and Roller interviewed petitioner a third time later that afternoon,

after again advising petitioner of his constitutional rights and receiving petitioner's

waiver.  Detective Brown spoke to petitioner a final time at 4:04 p.m., and took

photographs of petitioner's injuries with petitioner's consent.  During the interviews

with Brown, petitioner never requested an attorney and never indicated to Brown he

did not want to answer his questions.  Detective Brown did not make any threats or

promises to petitioner to get him to talk.  Brown in fact noted that petitioner was so

cooperative he thanked him.

Bay County Sheriff's Office Investigator Jeremy Mathis testified that he and

Panama City Police Officer John Morris interviewed petitioner at approximately

7:50 p.m. on May 24, 2007.  (Doc. 35, Ex. Z, p. 329).  Petitioner was bandaged, "but

---

[6] Brown's *Miranda* form (detailing Brown's advisement and petitioner's waiver) was admitted into evidence at petitioner's trial, but none of petitioner's statements to Brown during Brown's four interviews were introduced at trial.  (*See* Doc. 35, Ex. BB, pp. 119-131).  Only petitioner's statement to Detective Mathis, described *infra*, was introduced at petitioner's trial.  (Doc. 35, Ex. BB, pp. 198-242).

he was able to talk, he was able to communicate, seemed to be pretty lucid and understand what was going on." (*Id*.).   Investigator Mathis verbally advised petitioner of his constitutional rights.  Petitioner stated he understood his rights and responded affirmatively when asked if he would be willing to talk to Mathis and Morris.  Mathis asked petitioner if he was under the influence of any medication or narcotics that would affect his ability to understand Mathis' questions, to which petitioner responded, "I'm fine."  (Doc. 35, Ex. Z, pp. 333-34).  Petitioner described his employment, including the location of his employer.  Petitioner's description was detailed—he identified the intersecting streets on which his employer's building was located.  Petitioner identified the names and locations of the three banks he drove to the morning of the murder to make deposits for his employer, all of which were later confirmed by investigators as accurate.  Petitioner accurately identified, by number, the two motel rooms he was in when he killed Ms. Parker and later attempted to kill himself.  Petitioner accurately recalled items he left in the first motel room and items he left in his car.  Petitioner identified the name of the gas station on the interstate where he stopped for gas during his drive from Bay County (where he murdered Ms. Parker) to Osceola County (where he was found in the motel room).  Mathis testified that petitioner was "absolutely" coherent and understood the questions he was asked during the interview.  (Doc. 35, Ex. Z, p. 337).  Petitioner "answered every question


just like we had asked it.  There was no lag time about that." (*Id*.).  Toward the end

of Mathis' interview, a detention deputy stuck his head into the room and informed

Mathis that a nurse needed to check petitioner's vital signs.  Petitioner then indicated

he was getting tired and that "y'all going to have to get me a lawyer too."  (*Id*., pp.

337-38).  At that time Mathis and Morris stopped all questioning pertaining to the

criminal investigation.  Mathis' interview, which lasted 51 minutes, was recorded

on audio and transcribed.  The transcript was admitted at the suppression hearing.

Based on the evidence introduced at the hearing, the trial court denied the

motion to suppress in a written order.  The order provided, in relevant part:

[T]he Court makes these findings of fact and reaches these conclusions of law:

1.  On May 23, 2007, Michael Wilson, the main auditor and night
manager of the Master Inn in Osceola County, Florida, received a call
from a guest about hearing the sound of breaking glass.  Mr. Wilson
went to investigate and found glass from a broken window outside of
room 129.  The window was broken from the inside.

2.  Mr. Wilson made a non-emergency call to the Osceola County
Sheriff's Office to report the broken glass.

3.  Deputy John Gorsuch was the first deputy to arrive.  He
knocked on the door and announced "police."  Mr. Wilson testified that
they heard someone stumbling around and a gurgling sound, which
made them back up from the door.  The Deputy continued to pound on
the door but got no response except for the stumbling sounds.

4.  Based on the broken window and the sound of someone
stumbling around, law enforcement became concerned about the safety
of the occupant or occupants of the room and directed Mr. Wilson to

get a master key for the door.  The inside of the room was not visible from the outside.

5.   When Mr. Wilson returned with the key, two other law enforcement officers had arrived at the room.  The key was used to unlock the door and it was opened by law enforcement, however, the chain on the door kept it from being opened all the way.

6.   The law enforcement officers were able to look into the room and see the Defendant, Michael Tyrone Parker, lying on a bed in a pool of blood.  Once they saw this, one of the officers used his baton to break the chain and gained access to the room.

7.   The Defendant had multiple injuries to his wrists, arms, and neck and was subsequently airlifted for medical treatment.  During this transport, he made a statement about his wife being in the trunk of the car.  The Defendant was not in custody at that time and there is no evidence that this statement was in response to any questions from any of those attending him or in his presence.  This information was relayed to the law enforcement officers at the Master Inn.  Sgt. Fred Henderson heard the transmission from the emergency crew, went into room 129, retrieved the keys to the Defendant's car, opened the truck, and found the body of Wendy Burrough Parker, the Defendant's wife.

8.   There was no evidence introduced at the hearing showing that the Defendant, Michael Tyrone Parker, was not in lawful possession of room 129 in the early morning hours of May 23, 2007.

9.   The Defendant has moved the Court to suppress all the evidence seized in this case based on the warrantless entry of the Defendant's hotel room, the subsequent discovery of the victim's body in the trunk of his car, and all statements made by him as a result of this discovery.

. . . . [Discussion of legality of officers' entry into the motel room].

12.   The Defendant's contention that his statements after the entry into the hotel room should be suppressed as "fruit of the poisonous tree" is rejected since the Court has found that law enforcement's entry into the room was lawful.

13.   The Defendant, Michael Tyrone Parker, was admitted to the hospital in Orange County, Florida.   While at the hospital, the Defendant was interviewed by representatives from the Osceola County Sheriff's Office and the Bay County Sheriff's Office.   Mr. Parker was advised of his Miranda rights and was able to articulate that he had a clear understanding of those rights and gave several statements after said warning.   There was no evidence that, based on his medical condition, he could not make a competent waiver of his rights.

(Doc. 35, Ex. AA (order denying motion to suppress); *see also* Doc. 35, Ex. BB, pp. 198-242 (petitioner's statements to Investigator Mathis and Officer Morris)).   The First DCA summarily affirmed.   (Doc. 29, Ex. G).

Section 2254(d)(2) provides no basis for relief, because the state court's factual determinations are amply supported by the state court record.   *See Holsey*, 694 F.3d at 1257 ("A state court's . . . determination of facts is unreasonable only if 'no fairminded jurist' could agree with the state court's determination. . . ."); *Landers v. Warden, Attorney Gen. of Ala.*, 776 F.3d 1288, 1294 (11th Cir. 2015) (reiterating that standard as the test for evaluating the reasonableness of a state court's decision under § 2254(d)(2)).   Further, petitioner has not shown by clear and convincing evidence that any factual finding is incorrect.   *See* 28 U.S.C. § 2254(e) ("[A] determination of a factual issue made by a State court shall be presumed to be

correct.   The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence.").

Based on the evidence in the state court record, the First DCA reasonably could have concluded that petitioner's statements were voluntary.  The totality of the circumstances indicate that (1) the deputies explained petitioner's rights to him at least four times; (2) petitioner stated he understood his rights and talked to the officers each time; (3) the transcript of Investigator Mathis' interview and petitioner's responses to his questions give no indication that petitioner was confused or that he misunderstood the seriousness of the interrogation, but instead indicate that petitioner was alert, articulate, able to accurately recall and relate details, knew where he was and who he was talking to, and was not under the influence of drugs to such an extent that he was unaware of what he was saying or the consequences of his statements; (4) the deputies did not engage in any trickery, deception, or improper interrogation tactics.   The circumstances surrounding petitioner's interrogation are readily distinguishable from the circumstances which have led the Supreme Court to hold that a defendant's statements were involuntary and therefore not constitutionally admissible at trial.  For example, in *Blackburn, supra*, the accused had been discharged from the Armed Forces because of permanent mental disability, and his confession came after eight or nine hours of

sustained interrogation in a small room which was at times filled with police officers. In *Culombe v. Connecticut*, 367 U.S. 568, 81 S. Ct. 1860, 6 L. Ed. 2d 1037 (1961), the defendant was a 33-year-old illiterate mental defective who was questioned intermittently for some three days before he made a confession, without the benefit of counsel, although he had repeatedly requested such. In *Mincey, supra*, the interrogation occurred within just a few hours after the defendant's hospitalization for a gunshot wound, while the defendant was in "unbearable" pain, "depressed almost to the point of coma", heavily sedated, encumbered by tubes, needles, and breathing apparatus, and "evidently confused and unable to think clearly about either the events of that afternoon or the circumstances of his interrogation, since some of his written answers [to the officer's questions] were on their face not entirely coherent". 437 U.S. at 398. Moreover, the interrogating police officer in *Mincey* ignored the defendant's "clearly expressed . . . wish not to be interrogated" and the defendant's repeated requests for assistance of counsel. In addition, the officer in *Mincey* continued the interrogation despite the fact that the answers the defendant gave were unresponsive and uninformative, despite the defendant's complaint on several occasions that he was confused and unable to think clearly, and despite the interrogation being interrupted by the defendant losing consciousness and receiving medical treatment. *Id*. 437 U.S. at 399. This court cannot say that no fairminded

jurist could agree with the First DCA's conclusion that petitioner's confession was properly admitted at trial.  Petitioner's Ground Ten provides no basis for federal habeas relief.

## CERTIFICATE OF APPEALABILITY

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Courts provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant."  If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The petitioner in this case fails to make a substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84, 120 S. Ct. 1595, 146 L. Ed. 2d 542 (2000) (explaining the meaning of this term) (citation omitted).  Accordingly, the court should deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Rule 11(a), Rules Governing Section 2254 Cases.  If there is an objection to

this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully RECOMMENDED:

1.  That the amended petition for writ of habeas corpus (doc. 43), challenging the judgment of conviction and sentence in *State of Florida v. Michael Tyrone Parker*, Bay County Circuit Court Case No. 07-CF-1928, be DENIED.

2.  That the clerk be directed to close the file.

3.  That a certificate of appealability be DENIED.

At Pensacola, Florida this 9th day of November, 2016.

/s/ *Charles J. Kahn, Jr.*
**CHARLES J. KAHN, JR.**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations may be filed within fourteen (14) days after being served a copy thereof. <u>Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control.</u>  A copy of objections shall be served upon the magistrate judge and all other parties.  A party failing to object to a magistrate judge's findings or recommendations contained in a report and recommendation in accordance with the provisions of 28 U.S.C. § 636(b)(1) waives the right to challenge on appeal the district court's order based on unobjected-to factual and legal conclusions.  *See* 11th Cir. R. 3-1; 28 U.S.C. § 636.